IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE,

        PLAINTIFF,         *

    V.

JOHN WETZEL,

MATTHEW BENDER & COMPANY, Inc., LEXISGROUP, Nexis,

SERGEANT MURPHY,

OFFICER BOLTON,

AND HEARING EXAMINER

NUNEZ,

        DEFENDANTS.

Case No. 1:21-CV-0448

JURY TRIAL DEMAND

FILED
SCRANTON

MAR 1 2 2021

Per _____
DEPUTY CLERK

## COMPLAINT

    This is a civil rights action filed by John Doe, for damages under the civil Rights Act of 1871, 42 U.S.C. Section 1983, alleging a failure to protect and denial of due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and State torts of Negligence and libel.

## JURISDICTION

1. The court has jurisdiction over the Plaintiff's Claims of violation of federal

Constitutional rights under 42 U.S.C. Section 1331(1) and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims herein under 28 U.S.C. Section 1367.

## PARTIES

3. Plaintiff John Doe was incarcerated at Pennsylvania State Correctional Institute Mahonay during the events described in this Complaint.

4. Defendant John Wetzel, is the Pennsylvania Department of Corrections Secretary. He is responsible for the overall oversight, operation and administration of the PADOC. He further is responsible for the care, custody and control of all inmates within the PADOC. He receives regular reports regarding conditions in all the state prisons and the contracts the PADOC has with outside corporations. He further has the authority to implement policy and procedures within the PADOC to be followed by all PADOC employees as well as inmates.

2

5. Defendant Matthew Bender & Company, Inc. is a corporation that provides electronic publication services to the PADOC, including at PA State Correctional Institute Mahonay ("SCI-Mahonay"). and is a member of the LexisNexis Group.

6. Defendant Murphy was employed at SCI-Mahonay as a sergeant during the events described in this complaint.

7. Defendant Bolton was employed at SCI-Mahonay as an officer during the events described in this complaint.

8. Defendant Nunez was employed with the PADOC as a hearing examiner at SCI Mahonay during the events described in this complaint.

9. All the defendants are sued in their individual capacities. In addition, Defendants Wetzel and Bender are sued in their official capacity only to the extent for injunctive relief.

10 All the defendants have acted under the color of law at all times relevant to

3

this complaint.

## FACTS

11. On March 5, 2019, inmates Warren (prison# NF4897) and Durham (prison# NE5179) were issued cell restriction "by C-Block then Unit Manager Heenan.

12. Pursuant to PADCC DC-ADM 801 Policy when an inmate is placed on cell restriction, he or she may not attend unit block out recreation periods in the morning, afternoon or evening but must stay confined to their cell. This procedure is also consistent with PA DOC custom.

13. Inmates are issued cell restriction when they have been found to have committed a prison infraction.

14. Inmate Warren was found guilty of assaulting another inmate and or accused of the foregoing and spent

4

a period of time in solitary confinement
in the Restricted Housing Unit prior to
March 5, 2019.

15. Defendants Murphy and Bolton have
access to Inmate Warren's misconduct
violent history.

16. Despite being on cell restriction, on
March 5, 2019, Defendants Murphy and
Bolton opened Warren and Durham's
cell door (i.e. the cell they both occupy)
in violation their cell restriction sanction
and permitted them to engage in
Unit recreation with the Plaintiff and
others. Inmate Durham threatened Plaintiff.

17. Soon after, Inmate Durham got into
an altercation with the Plaintiff, and
Inmate Warren blind sided the plaintiff
with a barrage of punches to his face
with a closed fist.

18. Plaintiff was further attacked by inmate Durham by being hit with a closed fist while being assaulted by inmate Warren which was reported by Defendant Murphy.

19. Plaintiff attempted to defend himself but was overcome by the tag team much younger men in their twenties while Plaintiff was in his late fourties

20. Plaintiff was later transferred to the medical department where he received medical treatment for his injuries that included a busted lip, two black eyes, a cracked tooth, broken nose and back pain.

21. Plaintiff received stitches as part of the said medical treatment and photographs were taken by medical staff which Plaintiff requested be held for the record.

6

22. Plaintiff was subsequently transferred to solitary Confinement in the Restricted Housing Unit ("RHU") along with inmates Warren and Durham.

23. While in the RHU, Plaintiff was locked in a cell 24 hours a day and was not provided any cell cleaning supplies, or yard visitation with the exception of one day yard visitation. Plaintiff was further denied a family or attorney phone call.

24. Plaintiff has been diagnosed by doctors for mental health disabilities and infirmities (that his medical record will confirm during discovery) and was listed on the DOC Mental Health Roster.

25. Plaintiff received Misconduct # D178885 by Defendant Murphy charging him with fighting and refusing to obey an order.

26. Plaintiff submitted a witness form in accord with DC-ADM 801 policy requesting

7

two witnesses that were relevant to
the charges.

27. Plaintiff was never interviewed
by a licensed Psychologist Manager or Mental
Health Coordinator pursuant to DC-ADM
801 section (1)(D)(6), and the signing of
the Mental Health/Intellectual
Disability Consultation for Disciplinary
Disposition sent to Defendant Nunez
to proceed with a misconduct hearing
pursuant to DC-ADM 801 sec (1)(D)(7-10).

28. Despite Defendant Nunez's knowledge
of the foregoing policy implemented by
Defendant Wetzel, he conducted
a misconduct hearing on March 7,
2019 over the Plaintiff's objections.

29. Although Plaintiff Doe submitted an
inmate version in accord with DC ADM
801 section (3)(c) pleading not guilty to
the charge, and verbally stated he
Pleads not guilty, Defendant Nunez

8

falsified the state record indicating the Plaintiff entered "No Plea" on the DC-141, Part 2(B) form which is contrary to Plaintiff's submitted DC-141, Part 2(c) form that is part of the record.

30. Defendant Nunez, denied Plaintiffs two witnesses, and relied on false evidence (i.e. Inmate Barnes was engaged in the incident based on Defendant Murphy's said report) however, Defendant Murphy does not mention Mr. Barnes in his Report No. D17885.

31. Defendant Nunez sanctioned Plaintiff to the maximum of (90) days in solitary confinement for the fighting charge, based on false evidence indicated above on his sanction DC 141-Part 2(B) form.

32. Plaintiff seen inmate Durham in the RHU on march 5, 2019, and he indicated that they (he and Warren) attacked Plaintiff

9

because they were told and it was rumored that Plaintiff had "snitched for the government," which is untrue.

33 On March 10, 2019, Deputy Superintendent White indicated we have photographs of all of your injuries." However, a patient nurse indicated they did not take photographs of the stabbing and stash on Plaintiff's arm and they would return to do so, but never did.

34 On March 11, 2019, Grievance Coordinator Hinman denied Plaintiff's request for grievance forms to address these issues through the administrative remedies process.

35. On March 14, 2019, Plaintiff's inmate neighbor provided him a grievance forms and a SCI DC-141 Part 2(E) appeal form.

36  On March 14, 2019, Plaintiff submitted an administrative appeal.

37. On March 16, 2019, Plaintiff filed a grievance on the foregoing assault.

38. On or about March 17, 2019, Plaintiff was informed by an inmate nic named "SKi" that an individual that knew Plaintiff from society, and Plaintiff's alias name had read on the prison library computer (published by Matthew Bender & Company Inc.) that Plaintiff cooperated with the federal government. Therefore, a rumor developed that Plaintiff was a snitch based on the publication by Defendant Bender.

39. However, Plaintiff did not ever cooperate with the federal government, and evidence will be shown during litigation that the government charged Plaintiff with obstruction of justice for his failure

to cooperate. However, this falsehood publishing caused injury

40. Defendant Wetzel knows from his experience in corrections, common knowledge, grievances, lawsuits and court decisions that inmates who may be inferred to cooperate, inform, or work with law enforcement (whether the information is correct or incorrect) is subject to bodily harm and even death in a prison environment as well as in society.

41. Defendant Bender knows or should know through common knowledge, court records, lawsuits, and other public records that individuals who become known as informers or snitches may very well be subjected to physical harm in society and in prison.

42. The Case cited 1997 U.S. App. LEXIS 3431 is managed by Defendant Bender

43. Defendants Bender and Wetzel failed to develope a screening process before publishing cases made available to the prison population that could jeopadize an individual at the particular institution by causing them harm, injury or death.

44. Defendants Bender and Wetzel failed to further include a process that would notify the subject that a case involving them will be made electronically available to the prison population and provide them a fair opportunity to contest the facts, object to it being published at their institution or request that any part be redacted as not to jeopa-dize the good

13

order of the prison.

45.) Defendant Bender publishes cases based on facts and statements by third party individuals and make them available to the prison population.

46. Plaintiff recognizes the need for case law availability, however, a screening process should be developed to counter problems and attacks based on inaccurate, incomplete and false information on a subject at a particular location where the information is provided.

## Administrative Remedies

47. Plaintiff has attempted to exhaust regular administrative remedies, however, they were not available.

48. After being transferred from SCI-Mahanoy, Plaintiff contacted Grievance Coordinator Hinman (for SCI-Mahanoy) on April 5, 2019 and later the Chief Grievance

officer and Chief Hearing Examiner
and did not receive a decision of
the said appeals Plaintiff filed.

## LEGAL CLAIMS

Plaintiff re-allege and incorporate by reference the allegations
set forth in the entirety of this complaint as if fully set forth here

49. The actions of Defendants Murphy
and Bolton opening Inmates Warren
and Durham's cell door and permitting
them in the dayroom recreation area
when they were prohibited in the area
by their cell restriction constituted
a reckless disregard for Plaintiff's welfare
and safety and a deliberate indifference
to Plaintiff's and others safety, and a
failure to protect.

50. The above actions of Defendants
Murphy and Bolton in para. 49 constitutes
to the state tort of negligence as
the Defendants breached the duty of
care owed to Plaintiff.

51. The actions of Defendant Nunez,
specifically, holding a misconduct hearing
in violation of DC-ADM 801 Sections (1)(D)(6)

-10, & Section 3(C) as outlined in paras. 27-29 above; Failure to accept Plaintiff's Not guilty plea in violation of DC-ADM 801, falsifying state document DC-141, Part 2(C) form and denying Plaintiff's two relevant witnesses denied due process under state law (37 Pa, Code § 93.10) and the Fourteenth Amendment because Plaintiff's confinement and sanction of (90) days without the basic human needs of cell cleaning and yard visitation created atypical and significant hardship.

52. Defendant Wetzel's failure to develop a screening process to identify information published and made available to the prison population and notify the subject for a fair process outlined above constituted a reckless disregard for

welfare and safety, a failure to
protect and further constituted
the state tort of negligence.

53. Defendant Berder's failure to
develop a screening process to
notify a <u>subject</u> of information
that reasonably could cause them
physical harm, provide them a
fair opportunity to contest it in
whole or part, request that it
be redacted in part before publishing
to the prison population was a
state tort of negligence that
caused Plaintiff physical harm
and injury.

54. Defendant Bender publishing
a defamatory statement in the above
cited case that a reasonable man would be
likely to understand it in a libelous sense
particularly being published in a prison,

17

which inferred that Plaintiff was / or cooperated with the government by becoming a snitch and the statement was totally false was a state tort of libel/under the doctrine of Res Ipsa Loquitur.

## RELIEF

WHEREFORE, Plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. The defendants violated Plaintiff's Eighth Amendment and Fourteenth Amendment rights and state tort provisions and law.

2. Award compensatory damages in the following amounts:

1. $100,000 against Defendants Murphy, Bolton and Nunez severally.

2. $150,000 against Defendants Wetzel and Bender.

3. Award Punitive damages in the amount of $50,000 against each Defendant.

B. Issue an injuction ordering Defendants Bender and Wetzel to redact the sentence of the Publication that caused the injury.

C. Grant such other relief as it may appear that Plaintiff is entitled

March 4, 2021

Respectfully submitted,
C. W.
Plaintiff John Doe
AKA Chris Washington
AKA Robert Gillin
26500-083
USP Hazelton
PO Box 2000
Bruceton Mills, WV
26525

19

Robert Gillins
26500-083
AKA Chris Washington
 USP Hazelton
 PO Box 2000
Bruceton Mills, WV 26525





RECEIVED
SCRANTON
MAR 1 2 2021
PER____ DEPUTY CLERK

United States District Court
For the Middle District of PA
Clerk of Court
235 North Washington Ave
 PO Box 1148
Scranton, PA 18501-1148

'' Legal | Special Mail ''